## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **Criminal No. 04-CR-131** |
| v. | : | |
| | : | **(Judge Kane)** |
| BRIAN PENDELTON, | : | |
| | : | |
| Defendant | : | |

### MEMORANDUM AND ORDER

THE BACKGROUND TO THIS ORDER IS AS FOLLOWS:

On November 22, 2004, pursuant to an agreement promising cooperation with the

Government, Defendant pled guilty to one count of carjacking, in violation of 18 U.S.C. § 2119, and

one count of possessing a firearm during, in relation to, and in furtherance of a crime of violence, in

violation of 18 U.S.C. § 924(c).[1]  A presentence report was filed with the Court, calculating

Defendant's criminal history as Category IV and his offense level as 30, resulting in a guideline range of

135-168 months imprisonment, followed by an additional five-year sentence for the weapons charge

contained in Count VIII.  On March 17, 2005, the United States moved the Court to depart five levels

from the sentencing guidelines applicable to Defendant, and represented that Defendant provided the

Government with substantial assistance in the prosecution of two co-defendants for the commission of

several violent offenses.  For this substantial assistance, the Government requested that the Court

---

[1]        These charges are set forth as Counts IV and VIII of the First Superseding Indictment
handed down on August 11, 2004.  (Doc. No. 46.)  In addition to the charges to which Defendant pled
guilty, the First Superseding Indictment charged Defendant with two counts of possessing, carrying, and
brandishing a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Counts I and
III); a separate carjacking charge (Count II); conspiracy to possess weapons in furtherance of a violent
crime in violation of 18 U.S.C. § 924(o) (Count V); and possession with intent to distribute cocaine
base, in violation of 18 U.S.C. § 841(a)(1) (Count IX).

sentence Defendant within a guideline range of 84 to 105 months, followed by a consecutive five-year sentence on Count VIII.

On March 22, 2005, the Court granted the Government's motion for downward departure, and imposed a sentence of 147 months imprisonment, consisting of 87 months on Count IV and 60 months on Count VIII.  At the sentencing, Defendant voiced an objection, independent of counsel, to the original guideline application.  Finding no basis for the objection, the Court overruled it, noting that if Defendant could produce the authority he referenced, a motion pursuant to Federal Rule of Criminal Procedure 35(a) would properly be filed.

On March 25, 2005, pursuant to Rule 35(a), Defendant filed the motion presently before the Court, seeking to correct or amend the sentence imposed.  Specifically, Defendant argues that the Court erred in assigning criminal history points for Defendant's non-jury juvenile adjudications that came within two years of Defendant's guilty plea in this case.  Defendant contends that if the Court had refused to include Defendant's juvenile offenses in his criminal history calculation, Defendant would have been categorized with a reduced criminal history and would have been subjected to a considerably lower sentencing guideline range.

In response, the Government notes that it is settled law within the Third Circuit that courts may properly consider a defendant's non-jury juvenile adjudications when calculating criminal history under the sentencing guidelines, and that no subsequent decisions from the Third Circuit or the Supreme Court have altered that rule.  Accordingly, the Government argues that Defendant's criminal history was properly calculated at the time of sentencing, and that Defendant's sentence should be left undisturbed.

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court held that a fact that

2

"increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In reaching this conclusion, however, the Court provided the following important exception: the fact of a prior conviction may be used to increase the penalty for a crime beyond the statutory maximum even if it is not submitted to the jury and proved beyond a reasonable doubt. Id.

The Third Circuit has squarely addressed whether a prior non-jury juvenile adjudication qualifies as a "prior conviction" for purposes of the Apprendi exception, and answered that question in the affirmative: "A prior nonjury juvenile adjudication that was afforded all constitutionally-required procedural safeguards can properly be characterized as a prior conviction for Apprendi purposes." United States v. Jones, 332 F.3d 688, 696 (3d Cir. 2003).

Defendant essentially concedes that the holding of Jones negates his challenge to his sentence in this case.[2] However, he suggests, with no legal support, that the Supreme Court's subsequent

_____

[2]       During sentencing, Defendant's counsel all but conceded that the holding in Jones foreclosed Defendant's argument that his non-jury juvenile adjudications should not be considered in calculating his criminal sentence. However, Defendant represented to the Court, and apparently to his counsel, that somebody in prison had advised him that non-jury juvenile adjudications could not, in fact, be used to enhance a criminal sentence. Defendant indicated to the Court that he had been provided a case containing that precise holding, but he left the case in his cell and it was never provided to the Court. The Court can only assume that Defendant may have been referring to United States v. Tighe, 266 F.3d 1187 (9th Cir. 2001). In Tighe, the majority of a panel for the United States Court of Appeals for the Ninth Circuit determined that juvenile adjudications that do not afford the right to a jury trial and require a beyond-a-reasonable-doubt burden of proof do not fit within Apprendi's exception for prior convictions. 266 F.3d at 1194. In Jones, the Third Circuit flatly rejected Tighe's reasoning and its holding. See Jones, 332 F.3d at 696 ("we find nothing in Apprendi or Jones, two cases relied upon by the Tighe court . . . that requires us to hold that prior nonjury juvenile adjudications that afforded all required due process safeguards cannot be used to enhance a sentence"). The Court assumes that Defendant's former counsel, who provided Defendant with able representation throughout this case, explained that the holding of Jones is binding upon this Court, and that Tighe has no relevance

decisions in <u>Washington v. Blakely</u>, 542 U.S. 296 (2004) and <u>United States v. Booker</u>, 543 U.S. __,

125 S. Ct. 738 (2005) somehow "call into question the continued validity of <u>Jones</u> . . . regarding the

suitability of using non-jury juvenile adjudications to increase a defendant's statutory maximum

sentence."  (Doc. No. 139, at 3.)  Defendant fails to offer any persuasive argument that <u>Booker</u> has in

any way undermined, or otherwise impacted, the continued validity of <u>Jones</u>.

      In <u>Booker</u>, a majority of the Supreme Court held that mandatory enhancement of a sentence

under the United States Sentencing Guidelines, based upon facts found by the court alone, violates the

Sixth Amendment of the United States Constitution.  <u>Booker</u>, 125, S. Ct. at 756.  To correct this

infirmity, the Court excised that provision of the statute making application of the guidelines mandatory.

<u>Id.</u> at 764.  As the Third Circuit has explained, "[i]n the aftermath of <u>Booker</u>, the Federal Sentencing

Guidelines – once a mandatory regime circumscribing the discretion of district court judges – are

'effectively advisory'."  <u>United States v. Davis</u>, 407 F.3d 162, 163 (3d Cir. 2005) (quoting <u>Booker</u>,

125 S. Ct. at 757). The Third Circuit further explained that "[u]nder the post-<u>Booker</u> sentencing

framework, District Courts will consider the applicable advisory Guidelines range in addition to factors

set forth in 18 U.S.C. § 3553(a)."  <u>Id.</u> (citing <u>Booker</u>, 125 S. Ct. at 769).

      That is precisely what the Court did in this case.  Defendant was sentenced approximately two

months after <u>Booker</u> was decided, and the Court was at all times aware that the guidelines were no

longer binding, but were considered advisory.  Nevertheless, the Court concluded that the guideline

range applicable to crimes which Defendant committed was reasonable and appropriate.  Nothing in

---

at all to Defendant's sentence.

<u>Booker</u> bears on the continued validity of <u>Jones</u> nor the Court's discretion in considering Defendant's non-jury juvenile adjudications in an effort to calculate a sentence appropriate for the serious crimes committed in this case.

There is no technical error in the calculation of Defendant's advisory guideline range.  Indeed, the strictest application of the guidelines yielded a recommended sentence of up to 162 months confinement, followed by a mandatory five-year sentence for Count VIII.  Defendant successfully argued against the probation report, so that the proposed guideline range was reduced to remove points for obstruction of justice.  The range was further reduced on motion of the Government for a downward departure based upon Defendant's substantial assistance in the prosecution of other crimes, finally resulting in a reduced guideline range of 70 to 87 months, followed by a five-year sentence for Count VIII.  The Court determined that it was appropriate to sentence Defendant at the top of this reduced range, given the great seriousness of the crimes committed.  For all of the foregoing reasons, the Court finds no merit in Defendant's motion for the Court to amend or otherwise reconsider the sentence imposed.  Accordingly, the motion will be denied.

And now, this 3rd day of November 2005, for the reasons set forth above, **IT IS HEREBY ORDERED THAT** Defendant's Motion Pursuant to Court Direction to Correct Error (Doc. No. 139) is **DENIED**.

   S/ Yvette Kane
Yvette Kane
United States District Judge
