## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 04-CR-131-2** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **BRIAN PENDELTON,** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM

On November 22, 2004, pursuant to an agreement promising cooperation with the

Government, Defendant pleaded guilty to one count of carjacking, in violation of 18 U.S.C. §

2119, and one count of possessing a firearm during, in relation to, and in furtherance of a crime

of violence, in violation of 18 U.S.C. § 924(c).[1]  A presentence report was filed with the Court,

calculating Defendant's criminal history as Category IV and his offense level as 30, resulting in

a guideline range of 135 to 168 months imprisonment, followed by an additional five-year

sentence for the weapons charge contained in Count VIII.  On March 17, 2005, the United States

moved the Court to depart downward five levels from the sentencing guidelines applicable to

Defendant and represented that Defendant provided the Government with substantial assistance

in the prosecution of two co-defendants for the commission of several violent offenses.  For this

substantial assistance, the Government requested that the Court sentence Defendant within a

guideline range of 84 to 105 months, followed by a consecutive five-year sentence on Count

---

[1]  These charges are set forth as Counts IV and VIII of the First Superseding Indictment
handed down on August 11, 2004.  (Doc. No. 46.)  In addition to the charges to which Defendant
pleaded guilty, the First Superseding Indictment charged Defendant with two counts of
possessing, carrying, and brandishing a firearm in relation to a crime of violence in violation of
18 U.S.C. § 924(c) (Counts I and III); a separate carjacking charge (Count II); conspiracy to
possess weapons in furtherance of a violent crime in violation of 18 U.S.C. § 924(o) (Count V);
and possession with intent to distribute cocaine base, in violation of 18 U.S.C. § 841(a)(1)
(Count IX).

VIII.

On March 22, 2005, the Court granted the Government's motion for downward

departure, and imposed a sentence of 147 months imprisonment, consisting of 87 months on

Count IV and 60 months on Count VIII.  At sentencing, Defendant voiced an objection,

independent of counsel, to the original guideline application.  Finding no basis for the objection,

the Court overruled it, noting that if Defendant could produce the authority he referenced, a

motion pursuant to Federal Rule of Criminal Procedure 35(a) would properly be filed.

On March 25, 2005, pursuant to Rule 35(a), Defendant moved to correct or amend the

sentence imposed.  (Doc. No. 139.)  Specifically, Defendant argued that the Court erred in

assigning criminal history points for Defendant's non-jury juvenile adjudications that came

within two years of Defendant's guilty plea in this case.  Defendant contended that if the Court

had refused to include Defendant's juvenile offenses in his criminal history calculation,

Defendant would have been categorized with a reduced criminal history and would have been

subjected to a considerably lower sentencing-guideline range.  On November 3, 2005, this Court

entered an order denying Defendant's motion on the grounds that the United States Court of

Appeals for the Third Circuit had squarely rejected Defendant's argument in United States v.

Jones, 332 F.3d 688, 696 (3d Cir. 2003) ("A prior nonjury juvenile adjudication that was

afforded all constitutionally-required procedural safeguards can properly be characterized as a

prior conviction for Apprendi purposes.").  (Doc. No. 180.)

The docket reveals that on November 15, 2005, the copy of the Court's November 3,

2005, order that had been mailed to Defendant was returned to the Clerk of Court, apparently

because the address was incomplete or contained an incomplete registration number.  (Doc. No.

2

181.)  The Clerk of Court entered a docket annotation indicating that a copy of the November 3,

2005, order was re-mailed to Defendant on November 15, 2005.  (Id.)

    The docket further reflects that on January 6, 2005, Defendant contacted the Clerk of

Court, claiming that he still had not received a copy of the November 3, 2005, order.  (Docket

Ann. Jan. 6, 2006.)  The Clerk of Court confirmed that Defendant was incarcerated at USP-

Hazelton in Bruceton Mills, West Virginia.  (Id.)  The docket indicates that on January 6, 2005,

the Clerk of Court sent another copy of the November 3, 2005, order to Defendant addressed to

P.O. Box 2000, Bruceton Mills, West Virginia.  (Id.)  Approximately one month later, on

February 3, 2006, pursuant to Defendant's request, the Clerk of Court mailed Defendant copies

of his indictment, superseding indictment, and sentencing memorandum to USP-Hazelton.

(Docket Ann. Feb. 3, 2006.)

    On February 22, 2006, Defendant submitted a pro se notice of appeal with the United

States Court of Appeals for the Third Circuit, challenging this Court's November 3, 2005, order

denying Defendant's motion to amend or correct his sentence.  (Doc. No. 184.)  The notice of

appeal was accompanied by a motion to allow Defendant to file his notice of appeal out of time.

(Id., Attachment 1.)

    On June 19, 2006, the Third Circuit remanded Defendant's notice of appeal to this Court

with the following instructions:

> The foregoing appeal is remanded to the District Court with
> instructions to determine the cause of Appellant's delayed receipt of
> the order.  If it finds that the delay was caused by the prison, the
> District Court should recalculate the time for filing the appeal from
> the date Appellant received notice of the order and determine whether
> the notice of appeal was timely filed under the principles set forth in
> U.S. v. Grana, 864 F.2d 312 (3d Cir. 1989).  In the event the District
> Court finds that the notice of appeal was not timely filed, even with

> the recalculated date due to prison delay, it should then rule on
> Appellant's motion for extension of time.  The motion for extension
> of time to file an appeal was misdirected to this Court.  This Court is
> without authority to extend the time to appeal; thus, the motion will
> be forwarded to the District Court for consideration.  This Court
> retains jurisdiction.

(Doc. No. 194.)  Accordingly, the Court has been charged with determining the cause of

Defendant's allegedly delayed receipt of this Court's November 3, 2005, order, and to rule on

Defendant's motion to extend the time for filing a notice of appeal, in the event the Court

determines that the notice of appeal was untimely even with the due date recalculated due to

prison delay.[2]

The docket in this case reveals that the Clerk of Court mailed Defendant a third copy of

the Court's November 3, 2005, order on January 6, 2006, and the docket does not reflect that this

mailing was returned.[3]  Nevertheless, Defendant has claimed he did not receive the mailing until

"around the first week in February, 2006."  (Doc. No. 194, Attachment 1.)  In contrast to the

suggestion of the Third Circuit, Defendant did not specifically allege that the delivery delay was

the result of prison mishandling of the mail; rather, Defendant initially asserted only that he

"should not be held liable for postal service malfunctions or for the district court's lack of regard

for providing the defendant with a copy of the motion's order thereof."  (Govt. Ex. D, p. 2.)

---

[2]  It should be emphasized that the remand order does not dictate a finding of prison delay, but rather requires that the Court undertake to determine the cause of Defendant's delayed receipt of the order.  The Court also notes that the remand order appears to presume that there was, in fact, delay in the delivery of the order.  Although the express terms of the remand order instruct the Court "to determine the cause of Appellant's delayed receipt of the order," the Court presumes that it must first determine that there was, in fact, delayed delivery and/or receipt.

[3]  Similarly, the Clerk of Court sent a second copy of the November 3 order to Defendant on November 15, 2005, the same date that the original copy was returned to the Court.  (Doc. No. 181.)

Although the Court found the record contained little to support Defendant's contention that he did not receive the Court's order until early February 2006, the Court directed the Government to show cause why the Defendant's notice of appeal filed February 22, 2006, should not be considered timely filed or, alternatively, why Defendant's motion for an extension to file the appeal should not be granted.  (Doc. No. 198.)

The Government responded in a brief filed July 21, 2006.  (Doc. No. 201.)  In its response, the Government argues first that United States v. Grana, 864 F.2d 312 (3d Cir. 1989), does not mandate a recalculation of Defendant's appeal time because Defendant's claim of untimely notice asserts slow mail rather than mishandling by prison authorities.  Noting that Defendant nowhere alleges actual mishandling by prison authorities, but instead disparages the representations of the Clerk of Court regarding the various mailings it has sent to Defendant and further asserts Defendants' belief that he should not be penalized for "postal service malfunctions or for the district court's lack of regard for providing the defendant with a copy of the [November 3, 2005 Order]," the Government maintains that Grana is inapplicable.

Moreover, the Government argued that the record belies Defendant's suggestion that this Court has been derelict in its obligation to provide him with timely notice of decisions in his case.  As the Government correctly points out, this Court has sent Defendant copies of the November 3, 2005, order on three separate occasions – first on November 3, 2005; a second time on November 15, 2005; and a third time immediately following a telephone call that this Court's deputy clerk had with Defendant on January 6, 2006, during which Defendant was notified that

the Order had been entered on November 3, 2005.[4]

The Government next argues that to the extent the Defendant can be found to have claimed untimely notice for reasons other than slow mail or this Court's failure to provide Defendant with notice, the Court should require Defendant to specify the precise nature of his factual claim and to submit documentary evidence that he may have to support such claim.  The Government notes that Defendant submitted a motion on June 30, 2006, seeking an evidentiary hearing because such hearing is allegedly necessary "in order <u>to present evidence</u> and arguments that will militate in favor of the merits of the movant's claim" and "to propound relevant testimony from the various parties involved, including his own testimony, and <u>to present documentary evidence that substantially proves the veracity of his claims</u>."  (Doc. No. 199) (emphasis added).

In response to the Government's arguments, Defendant submitted a brief, accompanied by a  memorandum from a segregation counselor at USP-Hazelton identified only as "P. Garcia" that reads entirely as follows:

> A review of the mail room legal letters showed that inmate Pendleton [sic], Brian 12359-067 did not receive any mail thru our legal filing system from Nov 2005 thru Jan 31st 2006.  Should you have any questions please contact Segregation Counselor Garcia at 304-379-5000.

(Doc. No. 205, Ex. A.)[5]  On the basis of the foregoing submission and his own affidavit attesting

---

[4]  Indeed, Defendant initiated this contact with the Clerk of Court to advise that he had not yet received a copy of this Order and requesting that one be provided him immediately.  As noted, following this call, the Court issued Defendant a third copy of the Order.  (Docket Ann. Jan. 6, 2006.)

[5]  The Clerk of Court has placed several telephone calls to Segregation Counselor Garcia in an effort to attest to the validity of the memorandum Defendant submitted.  During each call,

that he did not receive a copy of the November order until February 8, 2006, Defendant

reiterated his demands for appointment of counsel and for the Court to hold an evidentiary

hearing to determine whether to grant Defendant an extension of time to appeal the order.[6]

In assessing the proper way of proceeding in this matter, the Court begins by referring to

the precise directive of the Third Circuit to this Court:

> The foregoing appeal is remanded to the District Court to determine the cause of Appellant's delayed receipt of the order. If it finds that the delay was caused by the prison, the District Court should recalculate the time for filing the appeal from the date Appellant received notice of the order and determine whether the notice of appeal was timely filed under the principles set forth in U.S. v. Grana, 864 F.2d 312 (3d Cir. 1989).

(Doc. No. 194) (emphasis added).  It is true that Defendant has never, in fact, claimed

specifically and exclusively that the delay in receiving orders from this Court was the result of

prison delay.  Instead, Defendant has speculated that the blame for this delay falls either on the

Clerk of Court or on the United States Postal Service, asserting that "despite the district court

clerk's office's claims of mailing the order to the defendant immediately after the matter had

been ruled on, the USP-Hazelton's mail room has no record of receipt of the order on any date

---

the Clerk of Court has been advised that P. Garcia is unavailable and that there is no way to leave messages for him/her, either through voicemail or other traditional methods.  No calls to USP-Hazelton have been returned.

[6] In his brief, Defendant declines to allege specifically that USP-Hazelton is responsible for the delay in delivering his mail, instead stating that "whether the cause of this frustration [i.e., delay] is happening at the hand of the Government's chief incarceration agent (the Federal Bureau of Prisons) or upon the existence of some un-known [sic] celestial event, is a matter the Defendant will elect not to speculate on."  (Doc. No. 205, at 4.)  Rather than exclusively asserting prison mishandling of the mail, Defendant instead repeatedly asserts his belief that the Government bears the burden of demonstrating the cause of the alleged delay – regardless of the alleged cause.  (Id.)

prior to early February, 2006" and arguing that he "should not be held liable for postal service malfunctions or for the district court's lack of regard for providing the defendant with a copy of the motion's order thereof."  (Govt. Ex. D, at 2.)  In a recent filing, Defendant suggests that the delay could have been the result of prison mishandling or a celestial event, but Defendant did not specify the precise cause of delay because, candidly, Defendant has no way of knowing.

The Court is satisfied that the Clerk of Court mailed a copy of the Court's November order to Defendant on three separate occasions, as reflected by the entries on the Court's docket. It is true that the first such mailing was returned to the Court due to failed delivery, and the Court agrees with Defendant that this fact at least suggests that Defendant may have experienced difficulty in receiving legal mail during incarceration at USP-Hazelton.  Approximately one and one-half months after the Clerk of Court reissued Defendant a copy of the November order, Defendant contacted the Clerk of Court a second time to complain that he had not received the order.  During this call held January 6, 2006, the Clerk of Court informed Defendant about the existence of the order and the fact that it had, in fact, been sent to Defendant in November 2005, confirmed Defendant's incarceration at USP-Hazelton, and mailed Defendant a third copy of the order immediately following this telephone call.  This mailing from the Clerk of Court was followed by yet another on February 3, 2006, in response to Defendant's request that the Clerk of Court provide him copies of his indictment, superseding indictment, and sentencing memorandum.[7]  As the Government correctly notes, this is not something the Clerk of Court

---

[7]  The Court agrees with the Government that there is something curious about the fact that Defendant requested these documents five days before the date he claims he finally received a copy of the November order from which he attempted to take an appeal.  The Court also finds it somewhat coincidental that the claimed date of receipt – February 8, 2006 – is, excepting weekends, exactly 10 days from the date Defendant filed his notice of appeal.

typically does, but did so in this case given that Defendant was proceeding <u>pro se</u> and had

exhibited considerable diligence in seeking to pursue an appeal.[8]

     In an effort to substantiate his request for an evidentiary hearing and to support his sworn

attestation that he did not receive the Court's several mailings until February 8, 2006, Defendant

submitted a very brief memorandum from a segregation counselor at USP-Hazelton who

indicates that Defendant did not receive any "legal mail" between November 2005 and January

31, 2006. This memorandum, without more, would not support a finding that USP-Hazelton has

had any responsibility for the failed or delayed deliveries to Defendant. Instead, the

memorandum suggests, at most, that USP-Hazelton did not receive any mail addressed to

Defendant for a period of three months. This limited piece of evidence does not explicitly

indicate that USP-Hazelton mishandled Defendant's mail; if anything, it suggests that the prison

simply did not receive any mail for Defendant until February 2006.

     The Court appreciates the fact that the Third Circuit has remanded this matter in order for

the Court to undertake an inquiry into the cause of "Appellant's delayed receipt of the order."

(Doc. No. 194.) The Court also recognizes that under <u>United States v. Grana</u>, the United States

bears the burden of producing evidence where a Defendant claims that mishandling of prisoner

mail accounts for his delayed receipt of legal mail. In this case, Defendant has never explicitly

alleged that USP-Hazelton mishandled his mail, but rather initially speculated that the Clerk of

Court or the Postal Service are responsible. Accordingly, there is some force to the

Government's assertion that the holding of <u>Grana</u> is inapplicable to this case. Nevertheless, to

the extent that an allegation of prison mishandling is a prerequisite to applying <u>Grana</u> and

---

    [8] None of these documents was returned to the Court.

requiring the Government to produce evidence, the Court finds that Defendant's response to the Government at least raises the possibility of prison delay sufficient to trigger the Court's analysis, and his affidavit and memorandum from a segregation counselor at USP-Hazelton at least relate to claims of delay even if they are not especially probative on whether USP-Hazelton bears exclusive responsibility for the alleged delay.

In Grana, the Third Circuit held that when an inmate has claimed prison mishandling of his legal mail has impaired his ability to timely file a notice of appeal or other document, the burden of producing evidence falls to the prison:

> The prison will be the party with the best and perhaps only access to the evidence needed to resolve such questions. We therefore interpret Houston [v. Lack, 487 U.S. 266 (1988),] as placing the burden on the prison of establishing the relevant dates. This allocation of the burden of proof provides the proper motivation for prison authorities to keep clear and accurate mail logs, which are essential to preserving appellate rights.

Grana, 864 F.2d at 316 (citations omitted). In this case, the Government has not produced any evidence regarding when, exactly, Defendant received mail from this Court, and has instead argued – not unreasonably – that Grana is simply inapplicable. Regardless of the Government's argument in this regard, because the Court concludes that Defendant has sufficiently averred that prison delay may have accounted for his allegedly delayed receipt of mail from this Court, and has to some degree supported his claim through his own affidavit and through a document purportedly from a USP-Hazelton employee with knowledge of Defendant's prison mail history, the Court finds it appropriate to require the Government to produce evidence regarding Defendant's receipt of mail at USP-Hazelton and any other evidence relevant to rebutting Defendant's claims and the evidence that he has offered in support thereof. The Court will enter

an order requiring the Government to submit such evidence not later than November 10, 2006, and will withhold from making additional rulings in this matter pending submission of such evidence.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Criminal No. 04-CR-131-2** |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **BRIAN PENDELTON,** | : | |
| | : | |
| **Defendant** | : | |

## ORDER

      **AND NOW**, this 27th day of October, 2006, upon consideration of Defendant's motion

for an extension of time to file a notice of appeal of this Court's order entered November 3,

2005; and upon consideration of the instructions set forth in the remand order entered by the

United States Court of Appeals for the Third Circuit (Doc. No. 194); and the Court finding that

Defendant has averred that prison mishandling of the mail may have caused or contributed to his

delayed receipt of his legal mail while incarcerated at USP-Hazelton; and the Court finding that

under United States v. Grana, 864 F.2d 312 (1989) the Government bears the burden of

producing evidence where a Defendant has alleged that prison mishandling of the mail or other

delay caused or contributed to his delayed receipt of legal mail and impaired his appellate rights;

**IT IS HEREBY ORDERED THAT** not later than Friday, November 10, 2006, the Government

shall produce evidence regarding the date(s) on which Defendant received legal mail at USP-

Hazelton and any other evidence to rebut that produced by Defendant in support of his claim that

he received no legal mail at USP-Hazelton until February 8, 2006.   The Court shall withhold

from making any additional ruling in this matter pending the Government's submission of

evidence in accordance with this Order.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania