# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal No. 04-CR-131-2 |
| v. : | |
| : | (Chief Judge Kane) |
| BRIAN PENDELTON, : | |
| : | |
| Defendant : | |

## MEMORANDUM

On November 22, 2004, pursuant to an agreement promising cooperation with the Government, Defendant pleaded guilty to one count of carjacking, in violation of 18 U.S.C. § 2119, and one count of possessing a firearm during, in relation to, and in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c).[1]  A presentence report was filed with the Court, calculating Defendant's criminal history as Category IV and his offense level as 30, resulting in a guideline range of 135 to 168 months imprisonment, followed by an additional five-year sentence for the weapons charge contained in Count VIII.  On March 17, 2005, the United States moved the Court to depart five levels from the sentencing guidelines applicable to Defendant, and represented that Defendant provided the Government with substantial assistance in the prosecution of two co-defendants for the commission of several violent offenses.  For this substantial assistance, the Government requested that the Court sentence Defendant within a guideline range of 84 to 105 months, followed by a consecutive five-year sentence on Count VIII.

---

[1] These charges are set forth as Counts IV and VIII of the First Superseding Indictment handed down on August 11, 2004.  (Doc. No. 46.)  In addition to the charges to which Defendant pleaded guilty, the First Superseding Indictment charged Defendant with two counts of possessing, carrying, and brandishing a firearm in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Counts I and III); a separate carjacking charge (Count II); conspiracy to possess weapons in furtherance of a violent crime in violation of 18 U.S.C. § 924(o) (Count V); and possession with intent to distribute cocaine base, in violation of 18 U.S.C. § 841(a)(1) (Count IX).

On March 22, 2005, the Court granted the Government's motion for downward departure, and imposed a sentence of 147 months imprisonment, consisting of 87 months on Count IV and 60 months on Count VIII.  At sentencing, Defendant voiced an objection, independent of counsel, to the original guideline application.  Finding no basis for the objection, the Court overruled it, noting that if Defendant could produce the authority he referenced, a motion pursuant to Federal Rule of Criminal Procedure 35(a) would properly be filed.

On March 25, 2005, pursuant to Rule 35(a), Defendant moved to correct or amend the sentence imposed.  (Doc. No. 139.)  Specifically, Defendant argued that the Court erred in assigning criminal history points for Defendant's non-jury juvenile adjudications that came within two years of Defendant's guilty plea in this case.  Defendant contended that if the Court had refused to include Defendant's juvenile offenses in his criminal history calculation, Defendant would have been categorized with a reduced criminal history and would have been subjected to a considerably lower sentencing-guideline range.  On November 3, 2005, this Court entered an order denying Defendant's motion on the grounds that the United States Court of Appeals for the Third Circuit had squarely rejected Defendant's argument in United States v. Jones, 332 F.3d 688, 696 (3d Cir. 2003) ("A prior nonjury juvenile adjudication that was afforded all constitutionally-required procedural safeguards can properly be characterized as a prior conviction for Apprendi purposes.").  (Doc. No. 180.)

The docket reveals that on November 15, 2005, the copy of the Court's November 3, 2005, order that had been mailed to Defendant was returned to the Clerk of Court, apparently because the address was incomplete or contained an incomplete registration number.  (Doc. No. 181.)  The Clerk of Court entered a docket annotation indicating that a copy of the November 3,

2

2005, order was re-mailed to Defendant on November 15, 2005. (Id.) This mailing was not returned to the Court.

The docket further reflects that on January 6, 2005, Defendant contacted the Clerk of Court, claiming that he still had not received a copy of the November 3, 2005, order. (Docket Ann. Jan. 6, 2006.) The Clerk of Court confirmed that Defendant was incarcerated at USP-Hazelton in Bruceton Mills, West Virginia. (Id.) The docket indicates that on January 6, 2005, the Clerk of Court sent another copy of the November 3, 2005, order to Defendant addressed to P.O. Box 2000, Bruceton Mills, West Virginia. (Id.) Approximately one month later, on February 3, 2006, pursuant to Defendant's request, the Clerk of Court mailed Defendant copies of his indictment, superseding indictment, and sentencing memorandum. (Docket Ann. Feb. 3, 2006.)

On February 22, 2006, Defendant submitted a pro se notice of appeal with the United States Court of Appeals for the Third Circuit, challenging this Court's November 3, 2005, order denying Defendant's motion to amend or correct his sentence. (Doc. No. 184.) The notice of appeal was accompanied by a motion to allow Defendant to file his notice of appeal out of time. (Id., Attachment 1.)

On June 19, 2006, the Third Circuit remanded Defendant's notice of appeal to this Court with the following instructions:

> The foregoing appeal is remanded to the District Court with instructions to determine the cause of Appellant's delayed receipt of the order. If it finds that the delay was caused by the prison, the District Court should recalculate the time for filing the appeal from the date Appellant received notice of the order and determine whether the notice of appeal was timely filed under the principles set forth in U.S. v. Grana, 864 F.2d 312 (3d Cir. 1989). In the event the District

> Court finds that the notice of appeal was not timely filed, even with the recalculated date due to prison delay, it should then rule on Appellant's motion for extension of time. The motion for extension of time to file an appeal was misdirected to this Court. This Court is without authority to extend the time to appeal; thus, the motion will be forwarded to the District Court for consideration. This Court retains jurisdiction.

(Doc. No. 194.)

Although the Court found the record contained little to support Defendant's contention that he did not receive the Court's order until early February 2006, the Court directed the Government to show cause why the Defendant's notice of appeal filed February 22, 2006, should not be considered timely filed or, alternatively, why Defendant's motion for an extension to file the appeal should not be granted. (Doc. No. 198.)

The Government responded in a brief filed July 21, 2006. (Doc. No. 201.) In its response, the Government argued, <u>inter alia</u>, that <u>United States v. Grana</u>, 864 F.2d 312 (3d Cir. 1989) does not mandate a recalculation of Defendant's appeal time because Defendant claimed that he received untimely notice due to slow mail rather than mishandling of the mail by prison authorities. Noting that Defendant had not alleged actual mishandling by prison authorities, but instead disparaged the representations of the Clerk of Court regarding the various mailings it has sent to Defendant and further asserted Defendant's belief that he should not be penalized for "postal service malfunctions or for the district court's lack of regard for providing the defendant with a copy of the [November 3, 2005 Order]," the Government argued that <u>Grana</u> is inapplicable.

Moreover, the Government argued that the record belies Defendant's suggestion that this Court had been derelict in its obligation to provide him with timely notice of decisions in his

case. As the Government correctly pointed out, this Court sent Defendant copies of the November 3, 2005, order on three separate occasions – first on November 3, 2005; a second time on November 15, 2005; and a third time immediately following a telephone call that this Court's deputy clerk had with Defendant on January 6, 2006, during which Defendant was notified that the Order had been entered on November 3, 2005.[2]

In response to the Government's arguments, Defendant submitted a brief, accompanied by a memorandum from a segregation counselor at USP-Hazelton identified only as "P. Garcia" that reads entirely as follows:

> A review of the mail room legal letters showed that inmate Pendleton [sic], Brian 12359-067 did not receive any mail thru our legal filing system from Nov 2005 thru Jan 31st 2006. Should you have any questions please contact Segregation Counselor Garcia at 304-379-5000.

(Doc. No. 205, Ex. A.)[3] On the basis of the foregoing submission and his own affidavit attesting that he did not receive a copy of the November order until February 8, 2006, Defendant reiterated his demands for appointment of counsel and for the Court to hold an evidentiary hearing to determine whether to grant Defendant an extension of time to appeal the order.[4]

---

[2] Indeed, Defendant initiated this contact with the Clerk of Court to advise that he had not yet received a copy of this Order and requesting that one be provided him immediately. As noted, following this call, the Court issued Defendant a third copy of the Order. (Docket Ann. Jan. 6, 2006.)

[3] The Clerk of Court placed several telephone calls to Segregation Counselor Garcia in an effort to attest to the validity of the memorandum Defendant submitted. During each call, the Clerk of Court was advised that P. Garcia is unavailable and that there is no way to leave messages for him/her, either through voicemail or other traditional methods. No calls to USP-Hazelton were returned.

[4] In his brief, Defendant declined to allege specifically that USP-Hazelton is responsible for the delay in delivering his mail, instead stating that "whether the cause of this frustration [i.e.,

Following careful consideration of the Third Circuit's order remanding this matter to determine whether Defendant's alleged delay in receiving mail at USP-Hazelton was the result of prison mishandling of the mail, together with Defendant's limited showing and the Government's arguments, the Court directed the Government to respond to Defendant's evidentiary showing in support of his claim. (Doc. No. 206.)

On November 13, 2006, the Government submitted the declaration of Diego M. Moreno, the Supervisory Inmate Systems Specialist at USP-Hazelton who is responsible for supervising the mail room at USP-Hazelton. (Doc. No. 207, Attachment.) Mr. Moreno attested that the memorandum from Pamela Garcia regarding Defendant's non-receipt of legal mail "is an authentic copy of a document actually authored by Ms. Garcia at the request of [Defendant]." (Id. at 1-2.) Mr. Moreno confirmed Ms. Garcia's declaration that there is no record at USP-Hazelton that indicates that Defendant received mail marked as "Special" or "Legal Mail" from November 2005 through January 31, 2006. (Id. at 2.)

In his declaration, Mr. Moreno attested that all mail that USP-Hazelton receives, including that originating from a court, that is not marked "Special" or "Legal Mail" is opened and inspected by mailroom staff to ensure that it does not contain contraband or any improper communications intended for an inmate other than the addressee. (Id.) No records are kept of USP-Hazelton's receipt of mail not marked as "Special" or "Legal Mail," or of the delivery of the

---

delay] is happening at the hand of the Government's chief incarceration agent (the Federal Bureau of Prisons) or upon the existence of some un-known [sic] celestial event, is a matter the Defendant will elect not to speculate on." (Doc. No. 205, at 4.) Rather than assert prison mishandling of the mail, Defendant instead repeatedly asserted his belief that the Government bears the burden of demonstrating the cause of the alleged delay – regardless of the alleged cause. (Id.)

mail to the addressee inmate.[5]  (Id.)

Mr. Moreno attested that it is the policy of USP-Hazelton, and of himself personally as the supervisor of the mail room at the prison, "to deliver all inmate mail promptly to the addressee inmate." (Id.) According to Mr. Moreno, "any intentional or reckless mishandling of inmate mail would be treated as a serious disciplinary matter." (Id.)  For that reason, Mr. Moreno attested to his belief that any mail sent by this Court to Defendant and properly addressed to him at USP-Hazelton would have been delivered promptly, assuming the mail was properly delivered by the United States Postal Services to the prison.  (Id.)

After careful consideration of the Court's obligations under the Third Circuit's order remanding this matter, and upon consideration of Defendant's arguments and evidence, as well as those offered by the Government, the Court concludes that there is no evidence to support Defendant's insinuation that prison mishandling of mail sent from this Court was the cause of his alleged delayed receipt of this Court's November 2005 order.

First, the Court emphasizes the precise directive of the Third Circuit to this Court:

> The foregoing appeal is remanded to the District Court <u>to determine the cause of Appellant's delayed receipt of the order</u>. If it finds that the delay was caused by the prison, the District Court should recalculate the time for filing the appeal from the date Appellant received notice of the order and determine whether the notice of appeal was timely filed under the principles set forth in <u>U.S. v. Grana</u>, 864 F.2d 312 (3d Cir. 1989).

(Doc. No. 194) (emphasis added).  It now must be emphasized that Defendant has never, in fact, claimed specifically and exclusively that the delay in receiving orders from this Court was the

---

[5] The Court has inquired independently with the Clerk of Court and is satisfied that it is not the practice of the Clerk's office to label mail sent from the Court to prisoners as "Special" or "Legal Mail."

result of prison delay.  Instead, Defendant has speculated that the blame for this delay falls either on the Clerk of Court or on the United States Postal Service, asserting that "despite the district court clerk's office's claims of mailing the order to the defendant immediately after the matter had been ruled on, the USP-Hazelton's mail room has no record of receipt of the order on any date prior to early February, 2006" and arguing that he "should not be held liable for postal service malfunctions or for the district court's lack of regard for providing the defendant with a copy of the motion's order thereof." (Govt. Ex. D, at 2.)  In a recent filing, Defendant suggested that the delay could have been the result of prison mishandling or a celestial event, but Defendant did not specify – less speculate upon – the precise cause of delay.

The Court is satisfied that the Clerk of Court mailed a copy of the Court's November order to Defendant on three separate occasions, as reflected by the entries on the Court's docket. It is true that the first such mailing was returned to the Court due to failed delivery, and the Court agrees with Defendant that this fact suggests that Defendant may have experienced difficulty in receiving legal mail during his incarceration at USP-Hazelton.  Approximately one and one-half months after the Clerk of Court reissued Defendant a copy of the November order, Defendant contacted the Clerk of Court a second time to complain that he had not received the order. During this call held January 6, 2006, the Clerk of Court informed Defendant about the existence of the order and the fact that it had, in fact, been sent to Defendant in November 2005, confirmed Defendant's incarceration at USP-Hazelton, and mailed Defendant a third copy of the order immediately following this telephone call.  This mailing from the Clerk of Court was followed by yet another on February 3, 2006, in response to Defendant's request that the Clerk of Court

provide him copies of his indictment, superseding indictment, and sentencing memorandum.[6] As the Government correctly notes, this is not something the Clerk of Court typically does, but did so in this case given that Defendant was proceeding pro se and had exhibited diligence in seeking to pursue an appeal.[7]

In an effort to substantiate his request for an evidentiary hearing and to support his sworn attestation that he did not receive the Court's several mailings until February 8, 2006, Defendant submitted a very brief memorandum from a segregation counselor at USP-Hazelton that indicates that Defendant did not receive any "legal mail" between November 2005 and January 31, 2006. This memorandum, without more, does not support a finding that USP-Hazelton has had any responsibility for the failed or delayed deliveries to Defendant. Instead, the memorandum suggests, at most, that USP-Hazelton did not receive any legal mail addressed to Defendant for a period of three months. This limited piece of evidence does not explicitly indicate that USP-Hazelton mishandled Defendant's mail; if anything, it suggests that the prison simply did not receive any mail for Defendant until February 2006. The evidentiary value of Ms. Garcia's memorandum was further narrowed by Mr. Moreno's declaration in which he described USP-Hazelton's mail-distribution practices, including the institutional practice of delivering mail to inmates promptly upon receipt and the punitive consequences that would attend intentional or reckless mishandling of inmate mail by prison staff.

---

[6] The Court agrees with the Government that there is something curious about the fact that Defendant requested these documents five days before the date he claims he finally received a copy of the November order from which he attempted to take an appeal. The Court also finds it somewhat coincidental that the claimed date of receipt – February 8, 2006 – is, excepting weekends, exactly 10 days from the date Defendant filed his notice of appeal.

[7] None of these documents was returned to the Court.

Case 1:04-cr-00131-YK   Document 209   Filed 01/12/07   Page 10 of 12

In sum, aside from the initial mailing that was returned to this Court, the Court cannot find that the Court's several mailings to Defendant were delayed during delivery to Defendant. Furthermore, even if the Court were to assume for the sake of argument that one or more of these mailings were delayed, there is no evidence that prison mishandling of the mail would have been to blame for such delay or alleged failed delivery. Notwithstanding the ambiguity and imprecision of Defendant's allegations, the Court has gone to considerable lengths to comply with the Third Circuit's remand order and to provide Defendant an adequate and fair process for determining whether there was, in fact, delay in the delivery of Defendant's mail and, if so, whether fault for such delay could fairly be attributed to prison officials. Following this process, the Court does not find that prison mishandling was the cause of Defendant's allegedly delayed receipt of his mail from this Court, and therefore the time period that elapsed between November 2005 and February 2006 cannot be excluded from the appeal period under Rule 4(b) of the Federal Rules of Appellate Procedure.

Having so found, the Court will also deny Defendant's motion for an extension of time to file his appeal. Rule 4(b)(4) provides as follows:

> Upon a finding of excusable neglect or good cause, the district court may – before or after the time has expired, with or without motion and notice – extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b).

Fed. R. App. P. 4(b)(4). The Court sent Defendant a copy of the November 2005 order on November 15, 2005. This mailing was never returned, nor was a subsequent mailing sent to Defendant in January 2006 containing yet another copy of the November 2005 order. The Court thus finds that, at the latest, Defendant's period for taking an appeal of the order entered

November 3, 2005, expired by the beginning of December 2005. Accordingly, the Court would not be authorized to extend Defendant's appeal period into 2006, much less past February 2006. Moreover, as Grana makes clear, any delay a prisoner experiences in the delivery of his mail that is not the result of prison mishandling but instead is due to slow mail is not to be excluded for purposes of calculating appeal periods. Whether in certain circumstances this rule may work a harsh result, that is not the case here, where Defendant was in somewhat regular contact with the Clerk's office and was aware that on November 3, 2005, the Court had entered an order denying his motion to amend or alter the judgment; where the Clerk of Court mailed copies of the order to Defendant on November 15, 2005, and January 6, 2006, and where neither mailing was returned to the Court; and where Defendant did not file anything with this Court or the Court of Appeals until the middle of February 2006.[8]

For all of the foregoing reasons, the Court finds that prison delay was not responsible for Defendant's alleged delayed receipt of mail sent from this Court, and Defendant's motion for an extension of time to file his notice of appeal with the Third Circuit will be denied. An appropriate order follows.

---

[8] As Defendant is aware, he retains the right to seek collateral relief under 28 U.S.C. § 2255, and the Court is aware that Defendant filed a petition for relief under that statute on June 14, 2006. (Doc. No. 189.) On that same day, Defendant filed motions asking that the Court hold his § 2255 petition in abeyance pending resolution of the instant matter and requesting an extension of time to file a memorandum of law in support of the petition. (Doc. Nos. 192, 193.) Following issuance of the instant memorandum and accompanying order, the Court will enter an order granting Defendant's motion for an extension to submit a brief in support of his § 2255 motion, and will issue Defendant a notice in accordance with United States v. Miller, together with a notice of election form. Upon receipt of Defendant's notice of election and his memorandum of law in support, the Court will direct that Defendant's § 2255 motion be served upon respondent.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal No. 04-CR-131-2 |
| v. | : | |
| | : | (Chief Judge Kane) |
| BRIAN PENDELTON, | : | |
| | : | |
| Defendant | : | |

## ORDER

**AND NOW**, this 12th day of January 2007, upon due consideration, and for the reasons set forth in the within memorandum, **IT IS HEREBY ORDERED THAT** Defendant's motion for an extension of time to appeal this Court's November 3, 2005, order denying Defendant's motion to amend or correct his sentence (Doc. No. 194-2) is **DENIED**.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania